The second case for argument 25-3068, Kevin Flowers v. Caremark PCS Health, et al. Thank you, Your Honor. May it please the Court, I'm Gary Martz and I represent the appellant in this case, Kevin Flowers. The District Court erred in declaring the Arkansas Network Adequacy Statute and the Mail Order Statute preempted by ERISA and dismissing Flowers' unjust enrichment claim. The District Court erred because the statute at issue did not have an impermissible connection with ERISA under the Supreme Court decision in Rutledge or in this Court's decision in the Webby case. A couple of reasons for that. First... Can I ask a preliminary question? Yes, sir. How about standing? What's the alleged injury in fact here? The injury to Mr. Flowers is the fact that he does not have access to pharmacy benefits in the way that the State of Arkansas has determined that they should be provided, particularly... Okay, I see the legally protected right. Okay. The right under the State of Arkansas, but did he plead that he intends to use a pharmacy that is now unavailable to him? I don't think that that's specifically pled, Your Honor. I think that... Wouldn't he need to? I'm not positive about that. I think his allegations in the complaint are that he was denied benefit of that and I think it's implicit that he does not have access to a pharmacy. I think were that an issue that had been raised in the District Court, it would have been appropriate to allow Mr. Flowers the opportunity to amend his complaint to include that sort of allegation if it needed to be more concrete than that. But I think it is implicit in the opinion that... In the complaint? I'm sorry, in the complaint. Mr. Flowers lives in Prescott. He works in a city called Prescott. I didn't say city, it's a town. Small rural area in the southwest part of Arkansas. And the allegation is, maybe not expressly, but that he does not have access to a retail community pharmacy in the way that he should have under the plan that is provided. The reason that a resubprehension doesn't apply here, these statutes that are at issue do not force a plan to adopt any scheme of substantive coverage. They don't require the payment of specific benefits. They don't bind plan administrators to specific rules for determining pharmacy beneficiary status. They do not require plans to provide any particular benefit to any particular beneficiary in any particular way. The statutes don't change anything as far as what or who the plan must cover. What about the Supreme Court and this Court's words of structure? Structure benefit plans. That's in all of it. Require providers to structure is in all of them. Benefit plans in particular ways. What about that? This does require them to construct it in a certain way for sure. That language does appear in those opinions, but I think it is not as broad as the district court applied it here. And the reason for that is, I think if we look at Webby, this Court's decision, applying Rutledge, where structure is discussed, the argument was made in that case by the PCMA, the party that was challenging those North Dakota statutes, that in particular one provision of that dealt with accreditation of pharmacies. And what it said was that a plan could not apply accreditation standards that were more stringent than what the state required for licensure. The argument was made there that that forced changes in the structure of plans, because obviously if the accreditation standards are less stringent than what the plan would like, more pharmacies would have access to the plan. This Court said that was not preempted and said that was an incidental effect. So if there's an incidental effect on the structure of a plan, then that statute is not preempted because, again it goes back to these questions, it does not change the coverage under the plan to any extent whatsoever. Looking at the Supreme Court's opinion in Rutledge, the indirect sort of effects that get a statute preempted still refer back to coverage. In Rutledge, the Supreme Court referred to acute, albeit indirect economic effects that force an ERISA plan to adopt a certain scheme of substantive coverage. So in this instance, the network adequacy statute might affect the plan, and it might not depending on where the plan is located under the terms of the statute, but if there is an effect, it's the sort of indirect effect that does not lead to preemption. Counsel, to ask a practical question, the Tenth Circuit has invalidated this, the Arkansas District Court has, and now the Sixth Circuit has, right? I mean, am I factually right? Not this, the Tenth Circuit case and the Sixth Circuit case deal with similar statutes, not the same statute. That's why I asked the question. Okay, great. But you're right. That's a decent point. And there are three states in a row there, Oklahoma, Arkansas, and Tennessee. Shouldn't they all have the same rule? Well, Your Honor, the Tenth Circuit had the opportunity to adopt the same rule because this court decided the Webby case first, and when the Tenth Circuit considered the Webby opinion, the Tenth Circuit said in fairly direct language that this court made a mistake. It called the court's reasoning formulaic. It said that it didn't explain itself adequately, and the Tenth Circuit eschewed that opportunity for uniformity. They invalidated the law, though, right? In the Tenth Circuit case? Yeah. Didn't they invalidate the Oklahoma law? They did, Your Honor. Well, I'm just looking at the result. Well, I think that this court has to follow its own reasoning. This court has to follow the reasoning in Webby, and I think that if we're looking at which court got it right, well, first of all, the Eighth Circuit follows Eighth Circuit opinions before it reaches out to other courts. That's the reason I disclaimed it. But I think the other thing to keep in mind is that Webby, I think, is a better application of the principles from Rutledge, and I think it's important to remember how Webby got to the point where the second Webby opinion, I think the first case had a different name, but the second opinion in that case came to be. The North Dakota District Court said that there was… Did the District Court here discuss Webby at all? Did not. Was it argued to the District Court? It was. It was. Does the District Court even cite Webby? Does not. Oh. And that's, I mean, I think that is the primary thrust of our argument as to why the District Court erred here, is that there was a controlling precedent of this court that was presented to the District Court, and instead of applying that, the court applied. Well, it's not controlling, is it? Webby? It's a totally different statute, a totally different situation. I think it's controlling, Your Honor, because it announces how this court is going to handle the issue of connection with preemption under ERISA. The principles might apply, but it's not controlling. It's not dead on point. That's fair enough. I mean, it is a different statute. It's a different state, and it's a different set of statutes. And the District Court does cite Rutledge in almost every sentence or every other sentence.  Yeah, all the time. The District Court does cite Rutledge. All the time. But I do think it was error for the District Court to cite Mulready, the Tenth Circuit case, and rely on it so heavily when the Mulready case directly rejects this court's reasoning in Webby. It's not, that's not a close question at all. I mean, the Tenth Circuit had the case in front of it, and it rejected it. And as I said, no uncertain terms. It rejected Webby as, in that case, persuasive. But I think here, whether we want to characterize the decision as controlling or not, it was an Eighth Circuit opinion describing how ERISA preemption applies, and the District Court did not apply it. And I think the big thing about it here, I think the thing that really matters in that, is the fact that a different result would be dictated under the reasoning of Webby. As I mentioned earlier, Webby at issue was a North Dakota accreditation statute, and it necessarily broadened the scope of plans. It necessarily broadened the number of pharmacies eligible for participation. The same sorts of arguments were made in Webby that have been made here, that that was impermissible because it changed the structure of plans, it required additional pharmacies to be admitted, and this court rejected that argument. And I think that's where we get into how Webby applies to this case, is that the effect here is the same. And in fact, I think the effect here of the network adequacy statute is far more modest than the effect of the North Dakota statute. Here, all the state of Arkansas has said is that if you have a plan, that depending on what sort of town the person lives in or what locality they live in, they have to have access to at least one retail community pharmacy within a reasonable distance of their home. Well, it's much more specific than that. And I agree. Yes, sir. Don't you think when it gets down to these specifics of certain percents and certain miles, quotas, specific rules, don't you think that's a central part of administration, to draw those lines? No, Your Honor, because I think that these issues get back in Rutledge and they get back in Webby to questions of coverage. This statute may say that a beneficiary of a plan needs access to a local pharmacy. They do not say what the local pharmacy must be. They do not say that the plan must cover a particular drug or any other thing. They don't dictate benefits. The statute does not dictate who is a beneficiary. All the statute does is say that a beneficiary needs to have access to a pharmacy within a particular radius of where they live. That is not dictating structure in terms of dictating coverage. It does not affect the coverage of the plan. And I think that that's where, too, the district court's findings, I think, even say, not findings, but conclusions, say that this is an indirect effect. And the district court focused, in the context of the mail-order statute, on the fact that it's cheaper if you mail drugs. Well, cheaper doesn't really carry the point under the authority in Rutledge because the Supreme Court in Rutledge rejected just that sort of point about, well, this affects how much stuff costs under the plan, so it must be preempted. And the Supreme Court said in Rutledge that ERISA does not preempt a state law that merely increases cost. Well, that's true. But, you know, in Webby, didn't we talk about the state law causing only a de minimis economic effect? And they're arguing on the other side that whatever economic effect this has, it is more than merely de minimis, right? And is that something we can't consider, even though we already said that was part of our decisional rubric? I think it's to be considered, but I don't think that there's any basis here to determine that this is de minimis, or that it's more than equal. Well, we have to be able to say it's de minimis, right? I mean, for you to prevail. I understand that, but I think that the thing here is that, looking at the, if the standard here is Webby, and in Webby we have a statute that greatly increases the number of pharmacies participating in a plan, and that was de minimis, this statute, which has a less broad effect, is not de minimis.  In Webby, it was de minimis because all they had to do was relax their standards for accreditation, right? That's correct. Isn't this a lot more? Isn't this saying you must include these pharmacies that otherwise wouldn't be included? Well, I think that that's an accurate description of the statute in Webby as well. This statute in question here does not dictate particular pharmacies. It does not say you must include this particular pharmacy. It's also entirely possible that there would be plans that wouldn't even be affected by this because they would have coverage under the statute already. Is there any basis in the record for your last statement, knowing Arkansas? I'm sorry? Is there any basis in the record for your last statement? I grew up near Arkansas. Knowing Arkansas? You'll have to tell me which statement I made that you're asking about. I'm sorry. No, no, but you just said it might not affect them at all. When you get down to two miles from a pharmacy, goodness gracious. We have national force. You have national force that are 20 miles by 30 miles. Go ahead. I don't believe there's a basis in the record. I believe if there were, for instance, in this particular case under the terms of this particular plan, if you live somewhere where there's a CVS pharmacy, which I know there are CVS pharmacies in Little Rock where I live, then you may already have adequate coverage if that was your plan. There's not a CVS pharmacy in Prescott. So that was what I was referring to there. I do think, back to your question, that the effects of the statute here are not as dramatic as the ones in Webby, even though that was accreditation standards. Here, though, there is no dictation in terms of you must include a particular pharmacy, you must include a particular pharmacy, and cover any sort of benefits. All that this does is say that there must be some minimal coverage. It may just be one pharmacy, and that being the case, it shouldn't be preempted. Thank you, Mr. Martz. Thank you. Thank you, Your Honor. May it please the Court. Post Rutledge, two different courts of appeals, the Tenth Circuit and Malready, and just last week McKee Foods' decision out of the Sixth Circuit, have held that ERISA preempts state laws that are just like or similar in effect to the network adequacy and mail order statutes that are at issue here. And they did so because these types of statutes interfere with central matters of plan administration. They interfere with how providers structure benefit plans in particular ways, and they do that, and this is very different than what this Court considered in Webby, they do it by mandating that certain types of pharmacies be included in plan networks. Now those decisions are not actually in conflict with this Court's decision in Webby, and that lack of conflict has been recognized, I think, tacitly by the district court decision below. It's been recognized by the district court decision in Amman out of Iowa that's now up on appeal in this Court, and it was recognized by the Solicitor General in the Malready decision, when Malready was being considered for the petition for a writ of certiorari, the Court asked the Solicitor General for its views, and the Solicitor General said, Malready properly applied Rutledge to this network adequacy provision, and that Malready did not create a circuit split with this Court. To the extent it discussed the Solicitor General's papers in the Supreme Court, discussed the possibility of a conflict with Webby, it was only, not on the network adequacy, but only on this probationary provision that was included in the Oklahoma statute, and it said maybe that's a closer call, but we don't think that that even creates a necessary conflict with this Court's decision. So if Flower's interpretation of preemption is to apply here, that will create a conflict, but one doesn't exist right now, and nobody thinks it does. For that reason, we think that preemption should be upheld, or this Court should affirm for the other reasons discussed in the briefing relating to unjust enrichment. Happy to talk about why I think that's the case. Well, yeah, let's focus in on Webby a little bit. I think Mr. Martz's argument essentially is that by relaxing standards in Webby, you're in effect having to add pharmacies that otherwise wouldn't be covered, or part of the plan, so to speak, and that's exactly what's happening here. And then the Tenth Circuit, to wrap it in more, said essentially Webby was wrongly decided to get to its result. So can you drill down on how you distinguish Webby a little bit? Yeah, I think there are a couple things baked in there, and I want to make sure I get back to your last point about how does it square, or was it really saying Webby was wrong? I don't think it necessarily was with respect to the issue that's present here, which is the network adequacy issue. That discussion, I know plaintiff's counsel has kind of phrased it as criticism, was suggesting that there should have been a different analysis of the economic impact and whether it truly was de minimis, or whether it was an impact on structure with respect to the accreditation provision in Webby. But it wasn't necessarily, and what it said is, we think that you should look at it from the perspective of what does it impact structure, and maybe you could look at whether that was de minimis. But even if we were to apply this court's Webby standard, the Tenth Circuit would have come out the same way. Now, with respect to the most important point, I think, that was part of your first part of your question, Your Honor, which is was this the same thing? Was Webby mandating that plans or PBMs include pharmacies? And that is simply not the case. What it said was you can't have these heightened accreditation standards, but if any plan or PBM said we just don't want this many pharmacies in our network, we don't have to add them. If we don't want one every five miles, we don't have to have them. Webby doesn't say anything about that, and that's why I think it's inappropriate to say that somehow the statutes at issue here, in the network adequacy, the mail order, and then the AW, the Any Willing Provider statutes that were at issue as well in McKee Foods and also in Mulready are somehow, I think they're more onerous on PBMs in short. And it's not just me who thinks that, because the District Court case Judge Rosen-Ahman says that's a critical distinction between Mulready and Webby, because Mulready dealt with statutory provisions that required you, maybe not to have a particular pharmacy named X in your network, but a pharmacy, and a particular type of pharmacy at that, a brick and mortar pharmacy within five miles for a certain percentage of your coverage. And Ahman says that's a distinction. There's more evidence of that distinction being recognized, and that's the U.S.'s decision, not the U.S. decision, the U.S. opinion. The U.S. filed an amicus brief in the Mulready case, and it said, it took a view that the probation provision, which I said was kind of akin to the accreditation provisions that this court was considering in Webby, and it said we want a new test there, we think that may be preempted. But with respect to these network adequacy provisions, the one that's virtually identical to what Arkansas has, and the issues with respect to mail and whether that should be counted, the United States said they didn't take a position that it was preempted. They didn't say that in those issues. And that, I think, is why, when it got up to the U.S. Supreme Court, they said that Mulready faithfully applied Rutledge, but also was consistent with Webby. And I do think, just to reiterate it, that is a fundamental distinction. Here, again, it doesn't have to be a particular pharmacy by name, but you absolutely have to have a certain number of brick and mortar pharmacies. And that's a big impact on structure. And that's what Ahman says, that's what Mulready says. I think that's the natural follow-through on McKee Foods as well. I do want to say just a brief moment on the unjust enrichment. I think it's rather straightforward, and we only discuss it here in the alternative as an alternative grounds for affirming. But there is no private right of action under either of these two statutes that the plaintiff is pursuing. And this court has instructed district courts not to expand liability in this way through the common law, unless there's some clear guidance from a state's courts. Here, in the reply brief, Flowers has admitted that no Arkansas court has discussed at all whether you can have an unjust enrichment claim based solely on a violation of a statute that does not have a private right of action. Now, Flowers also cites a couple of cases. There's a case that he cites that talks about, well, unjust enrichment is protean. It can take whatever form and right any wrong. I think that kind of statement from an appellate court in Arkansas isn't an indication that it would be so broad that it would expand to cover what we're talking about here. He also cites a BRILL, a leading treatise in Arkansas, for the suggestion that a violation of a law can support an unjust enrichment claim. That can be the unlawful conduct. But again... But even if there's... The problem that I see in the unjust enrichment claim is even if you assume all that is true, there has to be an impoverishment on the part of the person making a claim for relief. And he's never pled an impoverishment. He's never claimed a loss of any sort or type. He's never pled that, as a result, I had to do something differently. And so the pleading is just inadequate to actually state one of the essential elements of an unjust enrichment claim anyhow. I mean, I kind of cut through the whole thing to get to it and say, well, that's before we start talking about whether the cause exists or not. Let's see, was it pled? And it looks to me, as I read the amended complaint, that it just was never pled. I mean, there's a thing that says unjust enrichment, but it doesn't go through and say, I was impoverished as a result of this, right? Now, you may have been enriched, right? Your client may have made a lot more money as a result of this, but that's not enough. You've got to make that money at the expense of the person who's bringing the claim. Right. No, at the expense, Your Honor, is obviously critical. And even the cases that Flowers cites in his reply say the same thing. Just to be clear, we've never argued that it had to be direct. It could be direct or indirect, but it has to come from Flowers, and he's never alleged that it did. At most, what he's alleged in paragraph 33 of his complaint is to say, well, care work has been compensated by someone for its work. But this court has looked at many unjust enrichment cases. Arkansas has obviously looked at a lot of them. Having somebody else pay money doesn't mean that it's at the plaintiff's expense, and that's what's missing here. And that is the fundamental issue here and why there's no claim. Counsel? Go ahead. You should ask. Well, that kind of borders on the question I asked about standing. Do you have any response to that? Well, I do. I think that there are two things, and obviously we all begin with the given that standing can't be waived, right? And this court has a duty to look at it as well. There are allegations in the complaint, I think in paragraph 1, that Flowers himself wanted to be able to use his local community pharmacy. Now, I have a problem because I don't see a private right of action under this statute, and I don't think just absent the statute, just wanting to have the ability to use a pharmacy close to you doesn't seem to be a right we generally protect. So I think there's some interesting Article III standing issues. Well, I think the statute provides the right. That's not what I think is missing. What I think might be missing is the, maybe it's implicit, but the I want to use a pharmacy that's not available to me. Yes, and I do think, in fairness, if that is the angle that the court is going down, that paragraph 1 of the complaint literally says he desires to use a community pharmacy. That's there. That's probably, that may be sufficient. Right, and I think that's what they have to hang their hat on. I was getting it, and there's sort of Article III standing and then statutory standing, and I don't want to mix up the lack of a private right of action with Article III standing, but the statute doesn't give him any right to go and enforce these statutes. It rests that power elsewhere. I do want to point out just a couple more points. This thing about whether this impacts central administration, a central matter of plan administration, or whether it requires a particular plan structure, I mean, I think that is what all of these other courts have looked at in the Any Willing Provider statutes and the other network adequacy statutes. It's not just about cost. I mean, it literally is designed to look at how do you structure your plan, and I think there are a few components of these benefits in a pharmacy network. I mean, you've got the formulary, which is basically what drugs are going to be covered. You've got your how do you pay for them, what's the cost sharing provision, and then you have this very important part about how they're going to be delivered, and once you start monkeying with any of those three things, you impact how people are able to get their benefits, and you impact what ERISA was getting at, which is we want to be able to have employers provide prescription benefits in this case. We want to be able to have them provide prescription benefits in a uniform manner that isn't disruptive, and we want to make sure that they're able to do that and encouraged to do that, and if you start taking away their tools, the way they've structured it, you're interfering with their ability to deliver that, and you're eliminating that plan structure. I think we recognize there can be some disuniformity, right? Yes. And we say some disuniformity, quoting Rutledge, and we also say modest disuniformity is okay. Right. But all we have here is the complaint at this point, right? We're at a motion dismiss? We're at a motion dismiss, and what we have is the complaint and the allegations about the statute and the network benefits. Can we assess some disuniformity and modest disuniformity? I think you can because Rutledge, Gobey, these cases all draw a distinction about things that interfere with central matters of plan design, right? And you have a discussion in the complaint about the network. You have the statute that addresses the network, and you have the plan documents, which came in because they were referenced, which talks about the network and the benefit, including the mail order. That's defined as a benefit, by the way, in the plan documents that are in the record. And I think that's enough to say that's very central. You also have a healthy body of case law that has repeatedly noted the important role that PBMs play, and part of that is that network structure. And that's what all of these cases have recognized. Your Honor, unless there are any other questions, I'll give you some extra time. Thank you, Mr. Leffin. Thank you. Mr. March, you used up all your time, but we did ask you a bunch of questions during your last minute, so I'll allow you one minute if you'd like to do a quick rebuttal. Thank you. I appreciate that. I want to focus on Judge Erickson's question about unjust enrichment under Arkansas law. I don't think that that is a correct understanding of unjust enrichment under Arkansas law, that the benefit has to come directly from the plaintiff or that the plaintiff must be harmed in some way. What matters is that the defendant has received some sort of benefit that they should not retain because the circumstances suggest that that is unjust in some way. And the Arkansas appellate courts have said on multiple occasions that it does not have to come directly from the plaintiff. So that notion of impoverishment. It can be indirect, but don't you still have to plead in impoverishment? I mean, don't you have to say that I suffered as a result of the plan having lost as a whole? Mr. Flowers did plead that. He pleaded that this is an employee benefits plan under which he has provided benefits and that he's not provided the benefits that he's supposed to be providing. As my friend on the other side mentioned, paragraph one of the complaint, and this is the second amended complaint, appendix 55, alleges that he was deprived of the right to receive pharmacy health care services from the community retail pharmacies under the coverage of the plans. Later in the complaint, there is an allegation that Caremark derives unjust financial benefits in the form of payments to administer the drug benefit plans and profit from dispensing the resulting mail order CVS prescriptions. There are other allegations in there, in the complaint of Caremark receiving unjust enrichment through that, through that, those payments that are made for administering these plans. I think it's, your time's expired. Okay. Thank you. Appreciate it. Court appreciates both councils.